# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

MANUEL CHAPA                              CIVIL ACTION

versus                                    NO. 10-104

WARDEN LYNN COOPER                        SECTION: "D" (1)

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2). Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Manuel Chapa, is a state prisoner incarcerated at the Avoyelles Correctional Center, Cottonport, Louisiana. On October 28, 2004, he was convicted of possession

of sixty pounds or more, but less than two thousand pounds, of marijuana in violation of state law.[1] On April 19, 2005, he was found to be a third offender and was sentenced as such to a term of twenty-five years imprisonment without benefit of probation, parole, or suspension of sentence.[2] On March 24, 2006, the Louisiana First Circuit Court of Appeal affirmed that conviction and habitual offender adjudication; however, the sentence was vacated, and the matter was remanded for resentencing.[3]  On May 9, 2006, petitioner was resentenced to a term of twenty-five years imprisonment without benefit of probation, parole, or suspension of sentence, and he was additionally ordered to pay a fine of $50,000.00.[4]  The Louisiana Supreme Court then denied petitioner's related writ application on November 3, 2006.[5]

On October 30, 2007, petitioner filed with the state district court an application for post-conviction relief.[6]  That application was denied on February 1, 2008.[7]  His related writ

---

[1] State Rec., Vol. III of V, transcript of October 28, 2004, p. 185; State Rec., Vol. I of V, minute entry dated October 28, 2004; State Rec., Vol. I of V, jury verdict form.

[2] State Rec., Vol. III of IV, transcript of April 19, 2005; State Rec., Vol. I of V, minute entry dated April 19, 2005.

[3] State v. Chapa, No. 2005 K 1533 (La. App. 1st Cir. Mar. 24, 2006) (unpublished); State Rec., Vol. V of V.

[4] State Rec., Vol. IV of V, transcript of May 9, 2006.

[5] State v. Chapa, 940 So.2d 659 (La. 2006) (No. 2006-K-1042); State Rec. Vol. V of V.  While the direct appeal proceedings were still ongoing, petitioner filed with the state district court an undated motion to correct an illegal sentence on or about May 30, 2006.  That motion was denied on June 21, 2006.  State Rec., Vol. IV of V.

[6] State Rec., Vol. IV of V.

[7] State Rec., Vol. V of V, Judgment dated February 1, 2008.

applications were then likewise denied by the Louisiana First Circuit Court of Appeal on September 12, 2008,[8] and January 20, 2009,[9] and by the Louisiana Supreme Court on December 11, 2009.[10]

On December 24, 2009, petitioner filed the instant federal application for *habeas corpus* relief.[11] In support of his application, he asserts the following claims:

1. There was insufficient evidence to support petitioner's conviction; and

2. Petitioner received ineffective assistance of counsel.

<u>Timeliness</u>

The state argues that the federal application is untimely.[12] The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") generally requires that a petitioner bring his Section 2254 claims within one (1) year of the date on which his underlying criminal judgment

---

[8] <u>State v. Chapa</u>, No. 2008 KW 0985 (La. App. 1st Cir. Sept. 12, 2008) (unpublished); State Rec., Vol. V of V.

[9] <u>State v. Chapa</u>, No. 2008 KW 2025 (La. App. 1st Cir. Jan. 20, 2009) (unpublished); State Rec., Vol. V of V.

[10] <u>State *ex rel.* Chapa v. State</u>, 23 So.3d 914 (La. 2009) (No. 2009-KH-0537); State Rec., Vol. V of V. While those post-conviction proceedings were still ongoing, petitioner also filed with the state district court a motion to correct an illegal sentence on November 19, 2008. That motion was denied on December 19, 2008. State Rec., Vol. IV of V. His related writ application was likewise denied by the Louisiana First Circuit Court of Appeal on April 14, 2009. <u>State v. Chapa</u>, No. 2009 KW 0086 (La. App. 1st Cir. Apr. 14, 2009) (unpublished); State Rec., Vol. IV of V.

[11] Rec. Doc. 3.

[12] Rec. Doc. 9-1, pp. 2-4.

becomes "final." Under the AEDPA, a judgment is considered "final" upon the expiration of time for seeking direct review. 28 U.S.C. § 2244(d)(1)(A).[13]

As noted, the Louisiana Supreme Court denied petitioner's writ application on direct review on November 3, 2006. Therefore, under § 2244(d)(1)(A), his conviction and sentence became "final" on February 1, 2007, when his period expired for seeking a writ of certiorari from the United States Supreme Court. See Roberts v. Cockrell, 319 F.3d 690, 694 (5th Cir. 2003); Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999); Chester v. Cain, Civ. Action No. 01-1958, 2001 WL 1231660, at *3-4 (E.D. La. Oct. 15, 2001); see also U.S. Sup. Ct. R. 13(1).[14] Accordingly, his one-year period for seeking federal *habeas corpus* relief commenced on that date and expired one year later, unless that deadline was extended by tolling.

The AEDPA provides that the statute of limitations is tolled for the period of time during which a properly filed application for state post-conviction relief or other collateral review attacking a conviction or sentence is pending in state court. 28 U.S.C. § 2244(d)(2). After two hundred seventy (270) days elapsed, petitioner tolled the federal limitations period on October 30,

---

[13] Although § 2244(d)(1) has alternative provisions providing for other events which can trigger the commencement of the statute of limitations, those alternative provisions are not applicable in the instant case.

[14] In its response, the state argues that petitioner's conviction became final even earlier because his Louisiana Supreme Court writ application was untimely filed. The state is wrong. As the state correctly notes, petitioner had thirty days to file his writ application with the Louisiana Supreme Court. See Louisiana Supreme Court Rule X, § 5(a). The state argues that petitioner's writ application was therefore due on April 23, 2006, and so was untimely because it was not mailed until April 24. What the state overlooks is the fact that April 23, 2006, was a *Sunday*. Therefore, petitioner had until April 24 to file his application. See La.C.Cr.P. art. 13; La.Rev.Stat.Ann. § 1:55. Because the application was mailed on April 24, 2006, it was timely. See Louisiana Supreme Court Rule X, § 5(d).

2007, by filing a post-conviction application with the state district court.[15]  Tolling then continued

uninterrupted for the duration of the post-conviction proceedings, so long as he sought supervisory

review in a timely manner.  Grillette v. Warden, Winn Correctional Center, 372 F.3d 765, 769-70

(5th Cir. 2004).  The state does not contend, and the state court record does not reflect, that

petitioner's related appellate court writ applications were untimely.  Therefore, tolling continued

uninterrupted until the Louisiana Supreme Court denied relief on December 11, 2009.

When the limitations period resumed running at that point, petitioner had ninety-five

(95) days remaining.  Because he filed his federal application a mere thirteen (13) days later on

December 24, 2009,[16] it was timely filed.  In light of that fact and the state's concession that

petitioner exhausted his state court remedies,[17] the Court will now address petitioner's claims.

### Standard of Review

The AEDPA comprehensively overhauled federal *habeas corpus* legislation,

including 28 U.S.C. § 2254.  Amended subsections 2254(d)(1) and (2) contain revised standards of

review for questions of law, questions of fact, and mixed questions of law and fact.  The

---

[15] The United States Fifth Circuit Court of Appeals has held that federal *habeas* courts must apply Louisiana's "mailbox rule" when determining the filing date of a Louisiana state court filing, and therefore such a document is considered "filed" as of the moment the prisoner "placed it in the prison mail system."  Causey v. Cain, 450 F.3d 601, 607 (5th Cir. 2006).  Petitioner's application was signed October 30, 2007, and he states that he gave it to prison officials for mailing on that same date.  Rec. Doc. 3-1, p. 11.

[16] "A prisoner's habeas application is considered 'filed' when delivered to the prison authorities for mailing to the district court."  Roberts v. Cockrell, 319 F.3d 690, 691 n.2 (5th Cir. 2003). Petitioner placed his federal application in the prison mailing system on December 24, 2009.  See Rec. Doc. 3, p. 11.

[17] Rec. Doc. 9-1, p. 4.

amendments "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002). Provided that the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1) and pure questions of fact are reviewed under § 2254(d)(2). Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000).

As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." Bell, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases. A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir. 2010) (internal quotation marks, ellipses, brackets, and footnotes omitted).

Regarding the "unreasonable application" clause, the United States Supreme Court has explained:

> [A] state-court decision can involve an "unreasonable application" of
> this Court's clearly established precedent in two ways.  First, a
> state-court decision involves an unreasonable application of this
> Court's precedent if the state court identifies the correct governing
> legal rule from this Courts cases but unreasonably applies it to the
> facts of the particular state prisoner's case.  Second, a state-court
> decision also involves an unreasonable application of this Court's
> precedent if the state court either unreasonably extends a legal
> principle from our precedent to a new context where it should not
> apply or unreasonably refuses to extend that principle to a new
> context where it should apply.

Williams v. Taylor, 529 U.S. 362, 407 (2000).  The Supreme Court has noted that the focus of this inquiry "is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams that an unreasonable application is different from an incorrect one."  Bell, 535 U.S. at 694.

As to questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

Facts

On direct appeal, the Louisiana First Circuit Court of Appeal summarized the facts of this case as follows:

On March 24, 2002, the police responded to a vehicle accident in St. Tammany Parish involving a tractor-trailer and a pickup truck. The pickup truck had struck the rear of the tractor-trailer. At the time of the collision, the defendant was the driver of the tractor-trailer and David Salinas was a passenger in the vehicle.

St. Tammany Parish Sheriff's Office Deputy Gary Nunez, Jr. did not observe any injuries to the defendant, but did observe him nervously pacing back and forth and sweating profusely. The temperature, however, was cool. The defendant refused medical help.

The defendant advised Deputy Nunez that he was on his way to South Carolina and North Carolina to pick up some tractor-trailer trucks. However, Salinas gave a different account of the purpose of the trip.

Louisiana State Police Trooper Thomas Noto noted that the defendant's tractor-trailer truck was not carrying a load and found it suspicious that it would leave Houston, one of the largest ports in the country, without a load. Trooper Noto was also aware that Houston was considered a "source city" because ninety-nine percent of the drugs coming into the United States from Mexico traveled through Houston.

The defendant became more and more nervous as Trooper Noto spoke to him. The defendant squatted down, failed to maintain eye contact, and kept looking around. He was uncertain of his destination. He indicated he and Salinas were going to Charlotte, North Carolina to pick up and bring back three other trucks.

Salinas was also nervous when Trooper Noto spoke to him. He claimed he and the defendant were going to South Carolina to purchase a new car. Trooper Noto asked Salinas, the registered owner of the tractor-trailer, for consent to search the vehicle. Salinas indicated the defendant was in charge of the vehicle. The defendant gave written consent to search the vehicle.

While attempting to search the tractor-trailer, Trooper Noto went to the sleeper, but was unable to access the normal luggage storage area because the box had been bolted closed. He then exited the truck to see if he could access the box from under the truck. Trooper Noto pushed a knife into the box through a crack and when he pulled the knife out of the box, the blade had marijuana on it.

Ten packages of marijuana were recovered from the luggage box of the tractor-trailer, four packages were recovered from a bag inside the vehicle, and two packages were recovered from a bag in some bushes near the vehicle. All of the marijuana was wrapped in

an identical manner. It had been compressed, wrapped with Saran Wrap, smeared with grease, and then wrapped with more Saran Wrap. The marijuana had a street value of between $400.00 and $700.00 per pound and weighed a total of one hundred and seventy-three pounds.

Drug Enforcement Agent Scott Brownlie testified that it was "not very common at all" for the owner of a large amount of marijuana to send the drugs to a purchaser with a courier without letting the courier know what he was transporting.

Agent Brownlie also spoke to the defendant at the scene of the accident. The defendant claimed he was traveling with Salinas, the owner of the tractor-trailer, to pick up some vehicles. The defendant claimed he would be paid either twenty-two cents per mile or twenty-two percent of the load. Agent Brownlie found it suspicious that the defendant did not definitely know how he was going to be paid.

Agent Brownlie subsequently questioned Salinas about the bag containing two packages of marijuana. Salinas indicated that he attempted to conceal the bag in the bushes after marijuana flew forward to his feet during the collision. Salinas denied any knowledge of the presence of marijuana in the tractor-trailer prior to the collision. The defendant also denied any knowledge of the marijuana in the truck.

Salinas testified at trial. He claimed he had the marijuana concealed in two or three compartments in the tractor-trailer, and the defendant did not know the drugs were in the truck. Salinas claimed he had purchased the drugs from someone, but could not name the person who allegedly sold him the drugs. Salinas claimed "a man[,]" but not the defendant, had possession of the tractor-trailer immediately before the transportation of the marijuana. Salinas conceded that he had previously stated that the defendant had the tractor-trailer for eleven hours prior to the transportation of the marijuana, but claimed he only did so because his attorney told him to lie. He also claimed he did not remember telling probation and parole officer Beth Blanton that he was frightened about the safety of his family and himself and claimed he did not remember making a point of saying the defendant knew nothing about the drugs.

The defendant also testified at trial. He claimed he first learned of the marijuana in the tractor-trailer after the police discovered it. He denied ever going into the luggage compartment of the tractor-trailer. He claimed he was sweating and shaking when the police arrived at the accident scene because of injuries he sustained in the accident. He claimed he met Salinas twelve to thirteen hours

before being arrested and denied having possession of the truck before the transportation of the drugs.

The State also introduced into evidence documentation concerning the defendant's prior conviction for possession with intent to distribute approximately fifty-two kilograms of marijuana.[18]

## Sufficiency of the Evidence

Petitioner claims that there was insufficient evidence to support his conviction. On direct appeal, the Louisiana First Circuit Court of Appeal rejected that claim, holding:

> [T]he defendant contends the evidence was insufficient to prove the essential elements of the crime.
>
> The standard of review for sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude the State proved the essential elements of the crime and the defendant's identity as the perpetrator of that crime beyond a reasonable doubt. In conducting this review, we must also be expressly mindful of Louisiana's circumstantial evidence test, which states in part, "assuming every fact to be proved that the evidence tends to prove, in order to convict," every reasonable hypothesis of innocence is excluded. State v. Wright, 98-0601, p. 2 (La. App. 1st Cir. 2/19/99), 730 So.2d 485, 486, writs denied, 99-0802 (La. 10/29/99), 748 So.2d 1157 and 2000-0895 (La. 11/17/00), 773 So.2d 732 (quoting LSA-R.S. 15:438).
>
> When a conviction is based on both direct and circumstantial evidence, the reviewing court must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and the facts reasonably inferred from the circumstantial evidence must be sufficient for a rational juror to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. Wright, 98-0601 at p. 3, 730 So.2d at 487.
>
> The reviewing court is required to evaluate the circumstantial evidence in the light most favorable to the prosecution and determine if any alternative hypothesis is sufficiently reasonable that a rational

---

[18] State v. Chapa, No. 2005 K 1533, at pp. 2-5 (La. App. 1st Cir. Mar. 24, 2006) (unpublished); State Rec., Vol. V of V.

juror could not have found proof of guilt beyond a reasonable doubt. When a case involves circumstantial evidence and the trier of fact reasonably rejects the hypothesis of innocence presented by the defense, that hypothesis falls, and the defendant is guilty unless there is another hypothesis that raises a reasonable doubt. State v. Smith, 2003-0917, p. 5 (La. App. 1st Cir. 12/31/03), 868 So.2d 794, 799.

On the issue of whether the evidence sufficiently proved possession, the State is not required to show actual possession of drugs by a defendant in order to convict. Constructive possession is sufficient. A person is considered to be in constructive possession of a controlled dangerous substance if it is subject to his dominion and control, regardless of whether or not it is in his physical possession. Also, a person may be in joint possession of a drug if he willfully and knowingly shares with another the right to control the drug. However, the mere presence in the area where narcotics are discovered or mere association with the person who does control the drug or the area where it is located is insufficient to support a finding of constructive possession. Smith, 2003-0917 at pp. 5-6, 868 So.2d at 799.

A determination of whether or not there is "possession" sufficient to convict depends on the peculiar facts of each case. Factors to be considered in determining whether a defendant exercise dominion and control sufficient to constitute possession include his knowledge that drugs were in the area, his relationship with the person found to be in actual possession, his access to the area where the drugs were found, evidence of recent drug use, and his physical proximity to the drugs. Smith, 2003-0917 at p. 6, 868 So.2d at 799.

After a thorough review of the record, we are convinced the evidence presented herein, viewed in the light most favorable to the State, proved beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, all of the elements of the offense of possession of sixty pounds or more, but less than two thousand pounds of marijuana, and the defendant's identity as a perpetrator of that offense. The State sufficiently established the defendant's dominion and control over the marijuana recovered from the tractor-trailer he was driving. The jury heard and rejected the claims of the defendant and Salinas that the defendant had no knowledge of the marijuana in the tractor-trailer. Further, the defendant's nervous behavior when the police arrived was consistent with his knowledge of the marijuana in the tractor-trailer. As the trier of fact, the jury was free to accept or reject, in whole or in part, the testimony of any witness. State v. Johnson, 99-0385, p. 9 (La. App.

> 1st Cir. 11/5/99), 745 So.2d 217, 223, <u>writ denied</u>, <u>State ex rel.</u>
> <u>Johnson v. State</u>, 2000-0829 (La. 11/13/00), 774 So.2d 971.  On
> appeal, this Court will not assess the credibility of witnesses or
> reweigh the evidence to overturn a fact finder's determination of
> guilt.  <u>State v. Glynn</u>, 94-0332, p. 32 (La. App. 1st Cir. 4/7/95), 653
> So.2d 1288, 1310, <u>writ denied</u>, 95-1153 (La. 10/6/95), 661 So.2d 464.
>                    This assignment of error is without merit.[19]

The Louisiana Supreme Court then denied petitioner's related writ application without assigning

additional reasons.[20]

      Because a sufficiency of the evidence claim presents a mixed question of law and

fact, this Court must defer to the state court's decision rejecting petitioner's claim unless he shows

that the state court's decision "was contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. §

2254(d)(1); <u>Taylor v. Day</u>, Civ. Action No. 98-3190, 1999 WL 195515, at *3 (E.D. La. Apr. 6,

1999), <u>aff'd</u>, 213 F.3d 639 (5th Cir. 2000).  For the following reasons, the Court finds that petitioner

has made no such showing.

      Under federal law, claims of insufficient evidence are to be analyzed pursuant to the

standard set forth in <u>Jackson v. Virginia</u>, 443 U.S. 307 (1979), which held that "the relevant question

is whether, after viewing the evidence in the light most favorable to the prosecution, any rational

trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  <u>Id</u>.

at 319.  Accordingly, "[t]he <u>Jackson</u> inquiry 'does not focus on whether the trier of fact made the

*correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict

---

[19] <u>State v. Chapa</u>, No. 2005 K 1533, at pp. 6-8; State Rec., Vol. V of V.

[20] <u>State v. Chapa</u>, 940 So.2d 659 (La. 2006) (No. 2006-K-1042); State Rec. Vol. V of V.

or acquit.'" Santellan v. Cockrell, 271 F.3d 190, 193 (5th Cir. 2001) (quoting Herrera v. Collins, 506 U.S. 390, 402 (1993)) (emphasis added). Moreover, Louisiana's circumstantial evidence standard requiring that the every reasonable hypothesis of innocence be excluded does *not* apply in a federal *habeas corpus* proceedings; in these proceedings, *only* the Jackson standard need be satisfied, even if state law would impose a more demanding standard of proof. Foy v. Donnelly, 959 F.2d 1307, 1314 n.9 (5th Cir. 1992); Higgins v. Cain, Civ. Action No. 09-2632, 2010 WL 890998, at *21 n.38 (E.D. La. Mar. 8, 2010); Williams v. Cain, No. 07-4148, 2009 WL 224695, at *4 (E.D. La. Jan. 29, 2009); Davis v. Cain, Civ. Action No. 07-6389, 2008 WL 5191912, at *14 (E.D. La. Dec. 11, 2008); Wade v. Cain, Civil Action No. 05-0876, 2008 WL 2679519, at *6 (W.D. La. May 15, 2008) (Hornsby, M.J.) (adopted by Stagg, J., on July 3, 2008), aff'd, No. 08-30721, 2010 WL 1427372 (5th Cir. Apr. 9, 2010).

For the reasons noted by the state court, the testimony and physical evidence presented in the instant case, viewed in the light most favorable to the prosecution, were clearly sufficient for any rational trier of fact to find petitioner guilty beyond a reasonable doubt. Therefore, he cannot show that the state court's decision rejecting his claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Accordingly, this Court must defer to the state court's decision rejecting that claim.

<u>Ineffective Assistance of Counsel</u>

Petitioner also claims that he received ineffective assistance of counsel. The state district court found that claim to be "without merit,"[21] and the Louisiana First Circuit Court of Appeal and the Louisiana Supreme Court then likewise denied relief.[22] Because a claim of ineffective assistance of counsel is a mixed question of law and fact, this Court must defer to the state court decision rejecting petitioner's claim unless that decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); <u>Moore v. Cockrell</u>, 313 F.3d 880, 881 (5th Cir. 2002). For the following reasons, the Court finds that neither of those conditions is met in the instant case.

The United States Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel. A petitioner seeking relief must demonstrate that counsel's performance was deficient *and* that the deficient performance prejudiced his defense. <u>Strickland v. Washington</u>, 466 U.S. 668, 697 (1984). A petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." <u>Jernigan v. Collins</u>, 980 F.2d 292, 296 (5th Cir. 1993); <u>see also</u> <u>Clark v. Johnson</u>, 227 F.3d 273, 284 (5th Cir. 2000). If a court finds that a petitioner has made an insufficient showing as to either of the two

_____

[21] State Rec., Vol. V of V, Judgment dated February 1, 2008.

[22] <u>State v. Chapa</u>, No. 2008 KW 0985 (La. App. 1st Cir. Sept. 12, 2008) (unpublished); <u>State v. Chapa</u>, No. 2008 KW 2025 (La. App. 1st Cir. Jan. 20, 2009) (unpublished); <u>State *ex rel.* Chapa v. State</u>, 23 So.3d 914 (La. 2009) (No. 2009-KH-0537); State Rec., Vol. V of V.

–  14  –

prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong.  Strickland, 466 U.S. at 697.

To prevail on the deficiency prong of the Strickland test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment.  See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001).  "Counsel's performance is deficient if it falls below an objective standard of reasonableness."  Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998).  Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances.  See Strickland, 466 U.S. at 689.  "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'"  Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690).  A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.  See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to prove prejudice with respect to trial counsel, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694.  In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome."  Id.  In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial."  Crockett, 796 F.2d at 793.

In the instant case, petitioner argues that his counsel was ineffective for failing to move for a mistrial after the testimony of David Salinas. Salinas was called as a defense witness to testify that the drugs were his and that petitioner was unaware of their presence in the vehicle. During his direct examination, the following exchange occurred:

> Q. How was it resolved, the case against you?
>
> A. I got lied to by my attorney. I got lied. He told me that if I would pay him $18,000, he would get me probation, and I even have it in the transcript. I recorded my attorney where he said to me all that. $18,000 for him to pay the judge and the DA, Walter Reed, who is his uncle, you know, for me to get probation, for us to get probation. I have it right there, I recorded it.[23]

Defense counsel quickly changed the subject; however, the issue was again discussed briefly on cross and redirect examination to the same effect.[24] Petitioner claims that his counsel should have moved for a mistrial because Salinas's comments concerning the bribery scheme were tantamount to a statement that petitioner was guilty. This argument fails for several reasons.

First, Salinas did not testify that he tried to bribe the judge and the district attorney; rather, he merely indicated that his attorney offered to facilitate such a bribe. Salinas did not testify that either he or petitioner ever agreed to provide such a bribe, and the attorney's unsolicited proposition alone simply cannot fairly be construed as evidence of petitioner's guilt.

Second, it does not appear that Salinas's comment would have even constituted grounds for a mistrial under state law. See La.C.Cr.P. art. 775; see also La.C.Cr.P. arts. 770-771.

---

[23] State Rec., Vol. III of V, transcript of October 28, 2004, p. 76.

[24] State Rec., Vol. III of V, transcript of October 28, 2004, pp. 80 and 98.

Because the comment afforded no basis for granting a mistrial, petitioner's attorney was not ineffective for failing to request one. See Geiger v. Cain, 540 F.3d 303, 309 (5th Cir. 2008) (counsel is not ineffective for failing to move for a mistrial if there is "no basis to conclude that the trial court would have granted it, or would have reversibly erred by refusing it"), cert. denied, 129 S.Ct. 1996 (2009); see also United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999) ("An attorney's failure to raise a meritless argument ... cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue."); Sones v. Hargett, 61 F.3d 410, 415 n.5 (5th Cir. 1995) ("Counsel cannot be deficient for failing to press a frivolous point."); Clark v. Collins, 19 F.3d 959, 966 (5th Cir. 1994) ("Failure to raise meritless objections is not ineffective lawyering; it is the very opposite.").

Third, in any event, a decision not to move for a mistrial is one of trial strategy. Geiger, 540 F.3d at 309; Brooks v. Cain, Civ. Action No. 06-1869, 2009 WL 3088323, at *17 (E.D. La. Sept. 21, 2009); Thang Lai v. Cain, Civ. Action No. 08-3984, 2009 WL 324059, at *8 (E.D. La. Feb. 6, 2009); Franklin v. Thompson, Civ. Action No. 07-543, 2007 WL 3046642 (E.D. La. Oct. 17, 2007). The United States Fifth Circuit Court of Appeal has noted that counsel's "conscious and informed" strategic decision not to seek a mistrial "'cannot be the basis for constitutionally ineffective assistance unless it is so ill chosen that it permeates the entire trial with obvious unfairness.'" Ward v. Dretke, 420 F.3d 479, 491 (5th Cir. 2005) (quoting Martinez v. Dretke, 404 F.3d 878, 885 (5th Cir. 2005)). In making that decision, counsel is "required to balance the harm caused by the [improper conduct] against the legitimate possibility that a new trial would present less propitious prospects for his client." Id. Here, counsel could have legitimately decided that his

chances for acquittal were better at this trial rather than in a future one complicated by unknown

factors, such as a new jury perhaps less favorable to the defense or a prosecution team which had

learned from any of mistakes made during this trial.

Further, as with all decisions concerning matters of strategy and defense tactics, this

court must apply the "strong presumption" that such decisions fall "within the wide range of

reasonable professional assistance." Strickland, 466 U.S. at 690.  Federal courts have consistently

recognized that tactical decisions when supported by the circumstances are objectively reasonable

and do not amount to unconstitutionally deficient performance. Lamb v. Johnson, 179 F.3d 352, 358

(5th Cir. 1999).  Federal *habeas* courts presume that trial strategy is objectively reasonable unless

clearly proven otherwise, and the burden is on petitioner to demonstrate that counsel's strategy was

unreasonable. Strickland, 466 U.S. at 689; Moore v. Johnson, 194 F.3d 586, 591 (5th Cir. 1991).

 Petitioner has made no such showing in the instant case.

For all of these reasons, this Court simply cannot say that the state court's decision

denying this claim was contrary to, or involved an unreasonable application of, clearly established

Federal law, as determined by the Supreme Court of the United States.  Accordingly, pursuant to the

AEDPA's deferential standard, petitioner is not entitled to relief based on his counsel's failure to

move for a mistrial.

Out of an abundance of caution, the Court also notes that petitioner makes passing

references to two other instances in which his counsel was allegedly ineffective.  Even if those

references are meant to be construed as additional claims, they likewise fail for the following

reasons.

Petitioner alleges that defense counsel did not meet with him enough prior to trial. However, "brevity of time spent in consultation, without more, does not establish that counsel was ineffective." Jones v. Estelle, 622 F.2d 124, 127 (5th Cir. 1980). Moreover, petitioner has not shown that there was any additional beneficial information he could have revealed in further meetings, and, therefore, he has not demonstrated that he was prejudiced by counsel's failure to arrange such meetings.

Petitioner also argues that defense counsel should have procured additional evidence that petitioner had been hired through an employment agency. This argument is based on his assertion that he was not a co-conspirator but instead only an innocent laborer hired to help drive the tractor-trailer truck with no knowledge whatsoever that there was one hundred seventy-three pounds of marijuana hidden therein. Both David Salinas and petitioner in fact testified at trial that petitioner had been hired through an employment agency.[25] However, petitioner opines that if only *additional* evidence had been obtained verifying the circumstances of his hiring, then he would have been acquitted. That conclusion is simply too speculative. While the jurors perhaps rejected this defense due to the lack of corroborating evidence, there are also other equally valid reasons which could explain that rejection. For example, even if Salinas and petitioner originally met through an employment service, it does not necessarily follow that petitioner was not a co-conspirator with respect to this particular crime. As the prosecutor noted, the circumstances in this case were

---

[25] State Rec., Vols. II and III of V, transcript of October 28, 2004, pp. 71, 82, and 108-10.

inherently suspicious, making doubtful any claim that petitioner was an innocent dupe.[26] Moreover, as the prosecutor also argued, regardless of how they met, it makes more sense to believe that the two were partners in this particular trip, with petitioner supplying the drugs and Salinas supplying the truck, than to believe that Salinas would have risked detection by hiring a complete stranger to help drive simply to make the trip more comfortable.[27]   Therefore, even if the Court assumes that

---

[26] As the prosecutor noted in his closing argument:

> You have to picture where [petitioner] is close to a border. He is somebody that knows admittedly the game. He is somebody that knows what packaged marijuana is, that knows how to transport it, not because he's read about it, but because he's done it.
>
> And our theory of innocence is that he jumps into a tractor with no trailer and they are going to burn this amount of diesel fuel unloaded. Hey, that's a bolted down sleeper cab. Hey, we don't have any cargo. Hey, we're not carrying anything. Hey, we're leaving from a border town. Hey, we're going to a destination. The way I'm going to be paid is a percentage of what we're bringing back.
>
> What are we bringing back? Tractors piggyback worth 50, a hundred, $150,000 a pop. Is that a story that you believe? That's what you're being asked to believe. That's the defendant's theory of innocence. So when you don't leave your common sense behind, please apply it to this theory of innocence that the defendant is giving that makes absolutely no sense.

State Rec., Vol. III of V, transcript of October 28, 2004, pp. 168-69.

[27] As the prosecutor argued:

> What does make sense is that the defendant had that connection. He had the face that people trusted, that people with large amounts of weed that they wanted to bring in. Salinas had the truck. If Salinas had the dope and the truck he's going to decide to split his money for what reason? Because he doesn't want to sleep overnight. He's going to create another person that can rat him out. There's nothing but liabilities.
>
> Partners in crime are nothing but a liability, and the only

additional evidence regarding the employment service might have bolstered the defense, it is too far a stretch to conclude that there is a reasonable probability that the result of this proceeding would have been different if only counsel had procured such evidence. In light of that fact, petitioner has not shown that the state court's decision rejecting petitioner's claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.

## RECOMMENDATION

Accordingly, **IT IS RECOMMENDED** that the petition of **Manuel Chapa** for federal *habeas corpus* relief be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from

---

reason you have a partner is because you have to have them. You can't get it done without them, and that's why the judge will give you that principals argument.

State Rec., Vol. III of V, transcript of October 28, 2004, pp. 169-70.

a failure to object.  28 U.S.C. § 636(b)(1); <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[28]

New Orleans, Louisiana, this twenty-first day of July, 2010.

**SALLY SHUSHAN**
**UNITED STATES MAGISTRATE JUDGE**

---

[28] <u>Douglass</u> referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.